UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KENNETH M. SEATON, d/b/a GRAND RESORT HOTEL & CONVENTION CTR., <br><br> Plaintiff, <br><br> <br> TRIPADVISOR, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 3:11-cv-549 <br> ) (Phillips) <br> ) <br> ) <br> ) |

## ORDER

### I. Introduction

This matter comes before the Court concerning Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted [Doc. 7] and Plaintiff's Motion to Amend the Complaint [Doc. 16] pursuant to Fed. R. Civ. P. 15. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's Motion to Amend is **DENIED AS FUTILE**.

### II. Jurisdiction

This action arose in Circuit Court for Sevier County, Tennessee but has since been properly removed to this Court pursuant to 28 U.S.C. 1441(a) and 1446, *et seq.* The Court notes that it has jurisdiction over the defamation claim pursuant to 28 U.S.C. § 1332 as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

### III. Statement of the Facts

#### A. The Parties

Plaintiff Kenneth M. Seaton is the sole proprietor of Grand Resort Hotel and Convention Center ("Grand Resort") in Pigeon Forge, Tennessee. [Complaint, Doc. 1-1, ¶ 1.] Seaton is and has been in the hotel, restaurant, and convention business in Pigeon Forge since 1982. *Id.* Plaintiff claims that Grand Resort established itself as a valuable business in the State of Tennessee and City of Pigeon Forge, and that it justly and properly gained and kept the confidence and goodwill of the public generally, including the many tourists that vacation in the Smokey Mountains. *Id.* ¶ 5. Plaintiff also reports that the Grand Resort was viewed favorably by the local Department of Health. *Id.*

Defendant TripAdvisor, LLC ("TripAdvisor") is a limited liability company incorporated in Delaware, with its principal place of business in Massachusetts. It is a wholly owned subsidiary of Proposed Defendants Expedia, Inc. and TripAdvisor Holdings, LLC. [Doc. 1-1, ¶ 3.] Defendant TripAdvisor does business throughout the United States and worldwide by means of an internet website located at www.TripAdvisor.com. It is in the business of providing travel research information, including reviews, reports, opinions, surveys, and other information regarding hotels, resorts, restaurants, or other similar businesses of interest to persons traveling, or making travel plans worldwide. Defendant advertises that it adheres to certain rules and regulations of fairness in its ratings and reports concerning the hotels and restaurants it surveys. *Id.* ¶ 4. Its website proclaims that Defendant TripAdvisor provides the world's "most trusted travel advice." *Id.*

Visitors to TripAdvisor's website use its forums to exchange information relating to travel issues. TripAdvisor users are further encouraged to post comments and reviews and to answer surveys regarding hotels, resorts, restaurants, or other such places of interest.

TripAdvisor also creates and publishes on its website various lists, reports, or rankings pertaining to hotels, resorts, or other similar businesses in the travel or vacation industry. One such report is the "Dirtiest Hotels" list created, published, and distributed annually by TripAdvisor from 2006 to 2011. The annual feature is composed of a bold heading that reads, "2011 DIRTIEST HOTELS," and a list of ten hotels, ranked from one through ten, with number "one" designated as the "dirtiest hotel." When compiling its "Dirtiest Hotels" list, TripAdvisor relies solely on customer reviews; it does not inquire about, investigate, or consider any hotels except those receiving comments or reviews on the TripAdvisor website.

### B. The 2011 Dirtiest Hotels List

On January 25, 2011, Defendant TripAdvisor's "2011 Dirtiest Hotels" list reported that Grand Resort was "the dirtiest hotel in America." [Doc. 1-1, ¶ 7.]The survey was published via TripAdvisor's website and several media entities, including CNN, ABC, NBC, and WATE. *Id.* The list was published in different configurations in different media outlets, with Grand Resort ranking "number one" on the list in each configuration. One configuration contained the following statements, which Plaintiff claims exhibit "an effort to assure the public and the media that this list is factual, reliable, and trustworthy": (1) "World's Most Trusted Travel Advice"; (2) "TripAdvisor lifts the lid on America's Dirtiest Hotels"; (3) "Top 10 U.S. Crime-Scenes Revealed, According to Traveler Cleanliness Ratings"; (4) "Now in its sixth year, and true to its promise to share the whole truth about hotels to help travelers plan their trips, TripAdvisor names and shames the nation's most hair-raising hotels."; (5) "This year, the tarnished title of America's dirtiest hotel goes to Grand Resort Hotel and Convention Center, in Pigeon Forge, Tennessee." The list incorporated a photograph and a quote from TripAdvisor users about each

-3-

of the ten hotels, as well as a link to each hotel's page on TripAdvisor's website. The user quote for Grand Resort was: "There was dirt at least ½" thick in the bathtub which was filled with lots of dark hair;" the photograph for Grand Resort was of a ripped bedspread.

## IV.  Statement of the Case

The Plaintiff filed suit against the Defendant in the Circuit Court for Sevier County, Tennessee on October 11, 2011. On October 17, 2011, Defendant removed the matter to this Court. Plaintiff's original Complaint charges that Defendant is liable for "maliciously and wrongfully contriving, designing and intending to cause respected customers to lose confidence in the Plaintiff and to cause the public to cease and refrain from doing business with the Plaintiff and to cause great injury and irreparable damage to and to destroy Plaintiffs business and reputation by false and misleading means . . . ." [Doc. 1-1, ¶ 7.] Plaintiff further alleges that Defendant "defam[ed] the Plaintiffs business with unsubstantiated rumors and grossly distorted ratings and misleading statements to be used by consumers," [*Id.*], "singled out Plaintiffs business and directly advised customers not to trust them," [*Id.*] ¶ 8, "used a rating system which is flawed and inconsistent and distorts actual performance and perspective," [*Id.*] ¶ 9, "overstates the level of trust that can be placed in Defendants review of the Plaintiff site, thereby seeking to influence," [*Id.*] ¶ 10, and "acted recklessly and with disregard to Plaintiff's right to carry out its business . . . ," [*Id.*] ¶ 11.

Plaintiff claims that TripAdvisor consequently damaged and destroyed Grand Resort's excellent reputation, goodwill, confidence, and business advantage and caused great damages, economic and otherwise, to Plaintiff and Grand Resort. [*Id.*] ¶¶ 7, 11. Plaintiff prays for five-

-4-

million dollars in compensatory damages and five-million dollars in punitive damages. [Doc. 1-1, Prayer, at 2.]

V.      Analysis

        A.      Fed. R. Civ. P. 12(b)(6): Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009). To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim.

Typically, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, a court may consider any documents attached to a motion to dismiss to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.* at 89. In this case, Plaintiff's allegations concern Defendant's online "Dirtiest Hotels" list and the manner in which the list was portrayed

-5-

to online viewers. Thus, the Court will consider the online pages cited by Plaintiff and Defendant without converting this Motion to Dismiss to a motion for summary judgment.

1. **Defamation and False Light**

To assert a *prima facie* case of defamation in Tennessee, the plaintiff must establish that (1) the defendant published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.3d 569, 571 (Tenn. 1999). "Publication" is a term of art meaning the communication of defamatory matter to a third person. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994). To establish a prima facie case of the related tort of false light invasion of privacy in Tennessee, the plaintiff must establish the following elements: (1) publicity; (2) that places the plaintiff in a false light; (3) that is highly offensive to a reasonable person; and (4) that was made with the knowledge that the statement was false or with recklessness as to the falsity of the statement. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001). In recognition of the kinship between defamation and false light, the Tennessee Supreme Court has defined the contours of the tort of false light with reference to the Tennessee law on defamation. *Id.* at 645-49.

The first question for a court to address, regarding defamation, is whether the statement is capable of being understood as defamatory. *See Gallagher v. E.W. Scripps Co.*, 2009 U.S. Dist. LEXIS 45709, *20 (W.D. Tenn. May 28, 2009) (writing that, "[w]hile the issue of whether a statement may be understood by readers in a defamatory sense is ultimately a question for the jury, preliminary determination of whether a statement is capable of being so understood is a

-6-

question of law to be determined by the court."); *See also, Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978)(holding that "[a] trial court is permitted to determine that a statement is not defamatory as a matter of law . . . only when it can say that the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense.") *Id.* *16 (quoting *Biltcliffe v. Hailey's Harbor, Inc.*, 2005 Tenn. App. LEXIS 676 (Tenn. Ct. App. Oct. 27, 2005)). However, "[i]f the court determines that the statement or communication is not defamatory, then dismissal of the action is appropriate . . . ." *Battle v. A&E TV Networks, LLC,* 837 F. Supp. 767, 772 (M.D. Tenn. 2011).

Any defamation case, by its very nature, at least passively implicates the First Amendment, forcing courts to further refine and identify protected versus tortious speech. Acknowledging that the freedom to speak one's mind is a fundamental right, courts have been reluctant to "chill" the exercising of that freedom by penalizing opinions, even opinions that deeply offend the target. *See Snyder v. Phelps et.al.,* 562 U.S. ___, 131 S. Ct. 1207, 179 L.Ed. 2d 172 (2011)(holding that the First Amendment shields Fred Phelps and the Westboro Baptist Church when they picket the funerals of fallen service officers while holding signs such as "God hates America" and "You're Going to Hell"). The Court in *Snyder* reasoned "Westboro may have chosen the picket location to increase publicity for its views, and its speech may have been particularly hurtful to [the victim]. That does not mean that its speech should be afforded less than full First Amendment protection under the circumstances of this case.".[1]

---

[1] In *Snyder,* The Supreme Court ruled that "matters of public concern" received the "highest level" of First Amendment Protection. 131 S. Ct. 1207 at 179. The Supreme Court acknowledged in *Snyder* that the law determining which matters are of "public concern," and which matters are not public concern, is not well developed; however, it is not necessary to determine whether TripAdvisor's conduct is of public concern since the Plaintiff fails to allege facts sufficient to satisfy a defamation claim in any case. *Id.*

-7-

The First Amendment of the United States Constitution and Article I, Section 19 of the Tennessee Constitution protect "statement[s] of pure opinion, hyperbole, or rhetorical exaggeration." *Ogle v. Hocker*, 279 Fed. App'x 391, 397 (6th Cir. 2008) (quoting *Jolliff v. NLRB*, 513 F.3d 600, 610 (6th Cir. 2008)); *see also Johnson v. Carnes*, 2009 Tenn. App. LEXIS 727, *15 (Tenn. Ct. App. Oct. 29, 2009) ("In order to be actionable the statement must involve fact and not a matter of simple opinion.") (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *See also, Anderson v. Watchtown Bible & Tract Soc'y of N.Y., Inc.*, 2007 Tenn. App. LEXIS 29, *101 (Tenn. Ct. App. Jan. 19, 2007) ("[T]he First Amendment's freedom of speech provision bars defamation claims based on statements that are expressions of ideas or opinions and that 'cannot be reasonably interpreted as stating actual facts about an individual.'").

The Supreme Court and Tennessee courts recognize that not all opinions are automatically protected by the First Amendment. *Malmquist v. Hearst Corp.*, (W.D. Tenn. 2010) (citing *Milkovich*, 497 U.S. at 20; *Revis v. McClean*, 31 S.W.3d 250 (Tenn. Ct. App. 2000)). The Plaintiff correctly points out, some opinions can give rise to a defamation claim when they imply an assertion of fact or when the opinion is based upon erroneous information. *Milkovich*, 497 U.S. at 18-19. The Plaintiff alleges that the Defendant has "a flawed methodology or arbitrary nature" that "reskless[ly] or negligent[ly]… resulted in damages to the Plaintiff and his business." [Doc. 15 at 5]. As observed by the Supreme Court in *Milkovich*, "expressions of 'opinion' may often imply an assertion of objective fact." 497 U.S. at 18. Further, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Id.* at 18-19. Accordingly, defamation and false light causes of action require a

-8-

plaintiff to allege that the defaming party communicated a false or misleading statement of fact, or statement of opinion that implies having a basis in defamatory facts. *Steele v. Ritz*, 2009 Tenn. App. LEXIS 843, *9 (Tenn. Ct. App. Dec., 16, 2009).

### 2. Inherently Subjective versus Objectively Verifiable

In *Compuware Corp. v. Moody's Investors Servs.,* the Sixth Circuit addressed the question of whether Moody's credit rating system can be considered defamatory. 499 F.3d 520 (6th Cir. Mich. 2007). The Sixth Circuit writes, "a viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts." *Id* at 529. The Sixth Circuit continues, "We find no basis upon which we could conclude that the credit rating itself communicates any provably false factual connotation. Even if we could draw any fact-based inferences from this rating, such inferences could not be proven false because of the inherently subjective nature of Moody's ratings calculation." *Id.*

In order for the Plaintiff to properly state a claim for defamation or false light, the Plaintiff must allege that the Defendant communicated a false or misleading statement of fact, or a statement of opinion that implies having a basis in defamatory facts. *Steele,* 2009 Tenn. App. LEXIS 843, *9. Therefore, when considering a motion to dismiss in a defamation case, the analysis necessarily turns on semantics[2]. *See Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)) (holding that "[i]n determining whether a statement is capable of a defamatory meaning, the '[a]llegedly defamatory statements should be judged within the context in which they are made,' and given their usual meaning, 'as a person of ordinary intelligence would

---

[2] The term "semantics" has, at times, suffered from a bad reputation. Here, the term is meant only to describe that the nature of the Court's analysis must necessarily center upon the objective meaning of the allegedly offending terms.

-9-

understand them in light of the surrounding circumstances.'") Since the tort of defamation requires either a) a false or misleading statement of fact, or b) a statement of opinion that implies having a basis in defamatory fact, the task of the Court, at this stage, is to determine the legal significance of the underlying utterance, and then, once determined, to see whether that utterance then gives rise to a cause of action in tort. Adding complexity to the analysis, the subjective impression that the utterance gives to the alleged victim, Grand Resort, is immaterial; the standard is an objective one i.e. the impression that a "reasonable person" would draw from the language at issue is the only relevant inquiry for the Court to consider at this stage. *Revis,* 31 S.W.3d 250, 253. Contrary to the Plaintiff's argument in chief, the intent of the alleged tortfeasor is equally irrelevant in deciding whether a statement can be considered defamatory as a matter of law.[3] *Id.* Again, the question for the court is whether a reasonable person could understand the language in question as an assertion of fact, or, on the other hand, regard the language merely hyperbolic opinion or rhetorical exaggeration. *Hocker*, 279 Fed. App'x 391, 397.

### i. The Objective Meaning of the "2011 Dirtiest Hotels" List

In Plaintiff's Response to Defendant's Motion to Dismiss, the Plaintiff succinctly summarizes the central features of its argument in the following words:

---

[3] Defamation is not a strict liability offense; however, the Plaintiff makes several references to the Defendant's intent to issues a defamatory statement; Plaintiff alleges that the Defendant "…clearly overstated the accuracy, reliability, or level of trust that could be placed in the '2011 Dirtiest Hotels' list due to the flawed methodology or arbitrary nature used in creating the list of which TripAdvisor knew, should have known, or was reckless or negligent in disregarding the truth of the statement." [Doc. 15] at 5 (internal citations omitted). The Plaintiff misstates the tort of defamation. It is true that defamation requires that alleged offender "knowingly" issued a false statement, "recklessly" disregarded the truth, or "negligently, failed to ascertain the truth; however, the scienter, or mental state, requirements are not for determining whether the statement was defamatory as a matter of law; rather, the scienter requirements are requisite to attach a charge of defamation to a particular defendant. *Sullivan,* 995 S.W.3d 569 In other words, if a statement is legally innocuous, or not capable of a defamatory meaning, then whether the defendant intended it to be defamatory need not be considered—only after a statement is determined to be capable of a defamatory meaning should the Court need to consider the Defendant's intent so as to establish liability.

-10-

> The Plaintiff submits that TripAdvisor, in publishing its "2011 Dirtiest Hotels" list, was obviously implying to a reasonable person that the Grand Resort Hotel and Convention Center was the dirties hotel in the United States, the dirtiest hotel on the ten hotels on the "Dirtiest Hotels" list, and/or one of the dirtiest hotels in the United States. A reasonable person reading TripAdvisor's "2011 Dirtiest Hotels" list would not dismiss the message about the dirtiest hotels in making their hotel and travel plans. Furthermore, the [list] cannot be considered [hyperbole] because, in sharp contrast to typical hyperbole…[the] list is put forth with an actual numerical ranking, with comments suggesting that the rankings are actual, verifiable and factual…[A] ruling in favor of TripAdvisor…will allow TripAdvisor [to] become more impenetrable and more dangerous than ever in a 'lawless no-man's land on the Internet.

[Doc. 15 at 13-14 & 21]. While the Plaintiff argument is compelling, the Court disagrees. Plaintiff states that "[a] reasonable person reading TripAdvisor's "2011 Dirtiest Hotels" list would not dismiss the message about the dirtiest hotels in making their hotel and travel plans." *Id.* It is true that a reasonable person could likely consider TripAdvisor's list when weighing hotel options; however, "propensity to initiate negative mental contemplation on behalf of a potential patron" is not the test for defamation; if the fact finder were considering damages, the likelihood that a patron may read the list and be influenced would be relevant; however, at this stage of the proceeding, loss of business is not the Court's consideration. In order for the Plaintiff to sufficiently allege the tort of defamation, the Plaintiff must allege that TripAdvisor's list is defamatory, and to do that, the Court will not consider whether the list is compelling, as Plaintiff suggests, but whether a reasonable person could understand the language in question as an assertion of fact, or, on the other hand, is the language merely hyperbolic opinion or rhetorical exaggeration. *Hocker*, 279 Fed. App'x 391, 397.

In further support of Plaintiff's argument, Plaintiff asserts that "the [list] cannot be considered [hyperbole] because, "in sharp contrast to typical hyperbole…[the] list is put forth

-11-

with an actual numerical ranking, with comments suggesting that the rankings are actual, verifiable and factual…" *Id.* [Doc. 15 at 13-14]. It is true that the Defendant published an article with a numerical ranking, and that the Defendant suggests reasons to support its opinions, including that "87 percent of those who reviewed [Grand Resort] recommended against staying there," but neither the fact that Defendant numbers its opinions one through ten, nor that it supports its opinions with data, converts its opinions to objective statements of fact. Any reasonable person can distinguish opinions based on reasons from facts based on reasons—just because TripAdvisor states its reasons for including Grand Resort on its list does not make the assertion one of objective fact. A person who is unable to distinguish the phrase "it is hot," a subjective opinion, from "it is one-hundred degrees," an objective fact, is hardly "reasonable." Similarly, TripAdvisor's "Dirtiest Hotels" list is clearly unverifiable rhetorical hyperbole.

TripAdvisor's list is of the genre of hyperbole that is omnipresent. From law schools to restaurants, from judges to hospitals, everything is ranked, graded, ordered and critiqued. Undoubtedly, some will accept the array of "Best" and "Worst" rankings as impenetrable maxims. Certainly, some attempt to obfuscate the distinction between fact and opinion as part of their course of business. For those that read "eat here," "sleep there" or "go to this law school" and are unable to distinguish measured analysis of objective facts from sensational "carnival barking," compliance will be both steadfast and assured. Nevertheless, the standard, fortunately, is what a "reasonable person" would believe. A reasonable person would not confuse a ranking system, which uses consumer reviews as its litmus, for an objective assertion of fact; the reasonable person, in other words, knows the difference between a statement that is "inherently subjective" and one that is "objectively verifiable."

-12-

It does not appear to the Court that a reasonable person could believe that TripAdvisor's article reflected anything more than the opinions of TripAdvisor's millions of online users. Plaintiff has failed to plead any facts that would lead this Court to find that TripAdvisor made a statement of fact, or a statement of opinion that it intended readers to believe was based on facts.[4] Finally, though TripAdvisor's method of arriving at its conclusions, unverified online user reviews, is a poor evaluative metric, it is not a system sufficiently erroneous so as to be labeled 'defamatory" under the legal meaning of the term.

Accordingly, Defendant's motion to dismiss the Complaint for failure to state a claim [Doc. 7] will be **GRANTED.**

### B.      Freedom of Speech

In the Defendant's Memorandum in Support of Defendant's Motion to Dismiss and Plaintiff's Response, the parties disagree as to whether the allegedly defamatory list is protected

---

[4] Plaintiff's Response to Defendant's Motion to Dismiss relies heavily upon the deposition of Christopher Emmins, who testified that his company, KwikChex, conducted an investigation of TripAdvisor's claims of trustworthiness, which ultimately led to the Advertising Standards Authority's ("ASA") investigation of TripAdvisor and its claims of reliability. The ASA concluded that because the site does not verify its user reviews, and because its "claims [of trustworthiness] implied that consumers could be assured that all review content on the TripAdvisor site was genuine, when we understood that might not be the case, we concluded that the claims were misleading." The ASA prohibited TripAdvisor from claiming or implying that all reviews on its website were from real travelers or were honest, real, or could be trusted. While such documents are outside the scope of the Court's consideration in this motion to dismiss, the Court notes that the ASA's investigation does not support Plaintiff's assertion that Defendant's website, in this instance, made a statement of fact about Plaintiff, nor does the deposition prove, more generally, that TripAdvisor's analysis and subsequent compilation of user reviews into the "dirtiest hotels" list amounts to an assertion of fact. The ASA's study concludes that "customers would understand the claims [on TripAdvisor's website regarding the trustworthiness of its reviews"] . . . to mean that they could be certain that the reviews posted on the site were from genuine travellers, and accurately reflected those travellers' experiences of the places they visited." Thus, while the ASA prohibited TripAdvisor from claiming that all of its reviews were trustworthy, its study only affirms TripAdvisor's assertion that it is clear from their website that the reviews are just that: users' opinions. Whether or not the reviews are from genuine travelers is irrelevant to the question of whether TripAdvisor insinuated that its "2011 Dirtiest Hotels" list was based on anything other than opinion evidence.

-13-

under the First Amendment of the United States Constitution and Article 1, Section 19 of the Tennessee Constitution. [Doc. 8 at 7]; [Doc. 15 at 6]. The Court need not consider the question of whether the list is constitutionally-protected speech as the Court does not find the list to be defamatory; therefore, since the list is not defamatory, no balancing test weighing the virtue of free speech against the harm of reckless or injurious speech need be discussed by this Court.

### C.     Fed. R. Civ. P. 15: Motion to Amend the Complaint

Rule 15 of the Federal Rules of Civil Procedure states that where, as here, a defendant has already served a responsive pleading to the original complaint, "a party may amend its pleading only with the opposing party's written consent or the court's leave." It further provides, "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant plaintiffs leave to amend their complaint, the Court balances multiple factors, including undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 898 (6th Cir. 2006); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-49 (6th Cir. 2001).

A trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Fed. R. Civ. P. 15(a), and deny the motion if amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment would be futile if the proposed amended complaint "'would not survive a motion to dismiss [for failure to state a claim] under Federal Rule of Civil Procedure 12(b)(6).'" *Bell v. Tennessee*,

2012 WL 996560, *2 (E.D. Tenn. Mar. 22, 2012) (citing *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010)).

While it is evident to the Court that Plaintiff's motion to amend was made in a timely manner, was not made in bad faith, and would not unduly prejudice Defendants, after consideration of the claims alleged in Plaintiff's Proposed Amended Complaint, the Court holds that it must deny Plaintiff's motion as futile. The Court has addressed in Part V(A)(2)(i)of this Memorandum and Order why Plaintiff has failed to state a claim for defamation/libel and false light. Such failure is not ameliorated by Plaintiff's inclusion in its Proposed Amended Complaint of supplemental facts and more organized legal pleadings. Plaintiff's proposed claim of "Trade Libel/Injurious Falsehood" also fails to state a claim. To the extent that Tennessee common law recognizes trade libel and injurious falsehood as causes of action, such claims require proof of the publication of a false statement of fact. *See Kan. Bankers Sur. Co. v. Bahr Consultants, Inc.*, 69 F. Supp. 2d 1004, 1015 (E.D. Tenn. 1999); *see also AmMed. Direct, LLC v. Liberty Med. Supply, Inc.*, 2009 WL 3680539, *8 (M.D. Tenn. Sept. 23, 2009); *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 548 F. Supp. 2d 567, 584 (W.D. Tenn. 2007). Therefore, Plaintiff's trade libel claim fails to state a claim under Tennessee common law and in light of the Court's findings in Part V(a)(2).

Defendant's new claim for tortious interference with prospective business relationships would require a showing of the following elements: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or

-15-

termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002). Examples of "improper means" include:

> [T]hose means that are illegal or independently tortious, such as violations of statute, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of fiduciary relationship; and those means that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Id.* To prove improper motive, the plaintiff must "demonstrate that the defendant's predominant purpose was to injure the plaintiff." *Id.* at 701, n.5.

The Court does not find that Plaintiff's Proposed Amended Complaint contains sufficient direct or inferential allegations with respect to elements (3) and (4) of its claim for tortious interference with prospective business relationships. Regarding the element of intent, Plaintiff's assertion that, in publishing its "2011 Dirtiest Hotels" list, Defendant "intended to cause the breach or termination of the business relationships enjoyed by the Plaintiff" and "intended to and did damage or destroy the confidence, goodwill and reputation enjoyed by the plaintiff," are legal conclusions, unsupported by any factual allegations in the Complaint. [Doc. 16-1, ¶ 28.] And regarding the element of "improper means" or "improper motive," the only assertion Plaintiff makes is that Defendant "employed an improper means . . . in that it used faulty, false, subjective, and/or unverified information as a basis for its statements, or made the statements with no factual basis whatsoever." *Id.* In light of the Court's finding in Part V(A)(2)(i) that Defendant did not make any false statements of fact concerning Plaintiff, Plaintiff cannot rely solely upon its defamation claim as proof of Defendant's "improper means." Plaintiff's claim for

-16-

tortious interference of prospective business relationships does not contain plausible allegations of the "intent" or "improper" elements, and therefore addition of such a claim in this case would be futile.

Finally, because Plaintiff has failed to successfully state such claims against Defendant TripAdvisor, the Court finds that Defendant's action against Expedia, Inc. and TripAdvisor Holdings, LLC also must fail as a matter of law. Accordingly, Plaintiff's motion to amend its Complaint [Doc. 16] will be **DENIED AS FUTILE**.

### VI. Conclusion

For the reasons stated herein, Defendant's Motion to Dismiss the Complaint for failure to state a claim [Doc. 7] will be **GRANTED**, and Plaintiff's Motion to Amend its Complaint [Doc. 16] will be **DENIED AS FUTILE**.

**IT IS SO ORDERED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge